**In the United States District Court
for the District of Kansas**

———————

Case No. 24-cv-03035-TC

———————

JEROME BUFFALOHEAD,

*Plaintiff*

v.

KEVIN COOK, ET AL.,

*Defendants*

———————

**MEMORANDUM AND ORDER**

Jerome Buffalohead, proceeding pro se, sued two corrections officers—Kevin Cook and Scott Kincaid—after other inmates stabbed him in his prison cell. Doc. 1. The officers moved to dismiss. Doc. 23. For the following reasons, their motion is granted.

**I**

**A**

**1.** The defendants seek dismissal for failure to state a plausible claim under Federal Rule of Civil Procedure 12(b)(6). A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical

1

inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**2.** These rules do not operate in a vacuum. When a plaintiff, such as Buffalohead, proceeds pro se, a court must construe his or her pleadings generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit a court to construct legal theories on the plaintiff's behalf or assume facts not plead. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

And because Buffalohead filed his lawsuit pro se while incarcerated, an additional pleading standard applies. Ordinarily, a motion to dismiss is decided on the basis of the pleadings alone. *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993); *Routt v. Howry*, 835 F. App'x 379, 380 n.2 (10th Cir. 2020). But "[w]hen the pro se plaintiff is a prisoner, a court authorized investigation and report by prison officials (referred to as a *Martinez* Report) […] may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (referring to a report prepared consistent with *Martinez v. Aaron*, 570 F.2d 317, 318–19 (10th Cir. 1978)).

Usage of the information at the motion to dismiss stage depends on the plaintiff's allegations. Generally speaking, a district court reviewing a 12(b)(6) motion may not use a *Martinez* Report to refute facts pled by the plaintiff or otherwise resolve factual disputes. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Winkel v. Hammond*, 704 F. App'x 735 (10th Cir. 2017) (reversing a district court for dismissing a detainee's claim on a 12(b)(6) because it relied on contested facts from the *Martinez* Report). But a district court may use uncontroverted facts from a *Martinez* Report to dismiss a claim. *Gallagher v. Shelton*, 587 F.3d 1063, n.7 (10th Cir. 2009). A fact is uncontroverted if the plaintiff fails to provide information that would contest that particular fact. *Nickelberry v. Pharaoh*, 221 F.3d 1352 (10th Cir. 2000); *cf. Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) ("A bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* [R]eport are less specific or well-documented than those contained in the report.").

**B**

This dispute concerns an attack that the plaintiff, Jerome Buffalohead, suffered in his prison cell in July 2022 and the administrative remedies he subsequently pursued. Generally speaking, Buffalohead alleges that a corrections officer, Kevin Cook, intentionally unlocked Buffalohead's cell door, allowing two inmates to enter and attack him. Doc. 1 at 2. Buffalohead also alleges that another officer, Scott Kincaid, attempted to cover up Cook's misconduct during Kincaid's review of Buffalohead's administrative claims. *Id.* at 4–5. Buffalohead pursued two administrative remedies—a personal injury claim and a prisoner grievance—before filing this lawsuit against Cook and Kincaid. Doc. 1-1 at 1, 20–21. The officers moved to dismiss, asserting that Buffalohead's attempts at administrative exhaustion were insufficient. Doc. 23. The following describes both the stabbing incident itself and the administrative processes that followed.

**1.** On the evening of July 15, 2022, Jerome Buffalohead was attacked and stabbed inside his cell at Lansing Correctional Facility. Doc. 1 at 4. According to Buffalohead, the whole cellhouse was on lockdown at that time. *Id.* at 4–5. That is because Buffalohead resided in a high-security pod that is permanently on lockdown, meaning prisoners housed in Buffalohead's pod may leave their cells only with approval. Doc. 10 at 6; *Hall v. Bellmon*, 935 F.2d 1106, 1112–13 (10th Cir. 1991) (noting that uncontroverted facts from a *Martinez* Report may be helpful "to identify and clarify the issues [a] plaintiff raises in his complaint"

3

or to supplement the plaintiff's description of prison policies and practices). Right before the attack, the prisoners in Buffalohead's pod were in various stages of returning to their cells—some were already in their cells, some were in common areas, and some were returning from work assignments or other obligations. Doc. 10 at 6.

As the prisoners returned from various obligations, Cook was directing them to return to their assigned cells. Doc. 10 at 6. One prisoner approached Cook and claimed he lived in the same cell as Buffalohead. *Id.* The prisoner asked Cook to unlock the cell so he could gather the items he needed to shower. *Id.* at 6–7. Cook unlocked Buffalohead's cell and immediately returned to his officer station. *Id.*; Doc. 10-2 at ¶ 8.

Moments later, two inmates entered Buffalohead's cell and attacked him. Doc. 1 at 4; Doc. 10 at ¶ 2. They stabbed Buffalohead nine times, puncturing his lung, neck, and other areas. Doc. 1 at 4. Cook called a medical emergency, and Buffalohead was transported to a hospital. *Id.*; Doc. 10 at ¶ 3. The next day, the hospital discharged Buffalohead with recovery instructions. Doc. 10 at ¶ 5. Buffalohead does not allege lasting physical injuries, but he has reported ongoing mental and emotional harm, including symptoms associated with post-traumatic stress disorder like "flashbacks, insomnia, paranoia, and hypervigilance." *Id.* at ¶ 20; Doc. 1 at 5.

**2.** On August 4, 2022—about three weeks after the attack—Buffalohead filed a personal injury claim under article 16 of chapter 44 of the Kansas Administrative Regulations. Doc. 1-1 at 20; Kan. Admin. Regs. § 44-16-104a. In that claim, Buffalohead sought $500,000 in damages, claiming that Cook intentionally unlocked his cell door to allow the attack to occur. Doc. 1-1 at 20.

Kincaid was assigned to investigate Buffalohead's claim. Doc. 1-1 at 20, 23. During the investigation, Kincaid reviewed video footage from the wrong area of the facility and erroneously identified Buffalohead as another prisoner. *Id.* at 23–24. Based on that misidentification, Kincaid concluded that Buffalohead was not in his cell at the time of the incident and therefore determined that Buffalohead had fabricated his allegations against Cook. *Id.* Kincaid ultimately recommended denying Buffalohead's claim because he concluded the allegations against Cook were false and that Buffalohead had no permanent damage from the attack because his mental health concerns predated the stabbing incident. *Id.* at 23. Buffalohead appealed Kincaid's decision to

the warden of the facility and then to the Secretary of Corrections. *Id.* at 20–21. Both affirmed the denial. *Id.*

The Secretary of Corrections, however, recognized that Kincaid erred by misidentifying Buffalohead in the video footage. Doc. 1-1 at 24. Accordingly, the Secretary of Corrections re-reviewed Buffalohead's claim to ensure he was "not intentionally harmed by staff actions." *Id.* Despite acknowledging Kincaid's error, the Secretary of Corrections re-affirmed Kincaid's denial of Buffalohead's personal injury claim. *Id.* In particular, the Secretary of Corrections found that at the time of the incident Cook was trying to gain control of the unit during the lockdown and did not intend for Buffalohead or any other prisoner to be harmed. *Id.* The Secretary of Corrections also noted that Buffalohead's claim was untimely, that the amount of damages he sought exceeded the allowable limit, and that Buffalohead received immediate and adequate medical attention for his injuries. *Id.*

**3.** On November 28, 2022, Buffalohead filed a second administrative claim: a prisoner grievance pursuant to article 15 of chapter 44 of the Kansas Administrative Regulations. Doc. 1-1 at 1. Article 15 governs grievances concerning prison conditions, employee or inmate actions, and incidents within the facility. Kan. Admin. Regs. § 44-15-101a(d)(1)(B). Like his personal injury claim, Buffalohead's grievance alleged that Cook intentionally opened his cell door, permitting the attack. Doc. 1-1 at 1.

As required by article 15, Buffalohead first submitted his grievance to his unit team. Doc. 1-1 at 1. The unit team declined to consider Buffalohead's grievance on the merits because Buffalohead did not attach evidence demonstrating that he had attempted to resolve his claim informally before filing a formal grievance. *Id.* The team informed Buffalohead that such documentation was necessary for his grievance to proceed. *Id.* At that time, Buffalohead's failure to attach evidence of his attempt at informal resolution was the only reason the unit team cited for denying his grievance. *See id.* Although Buffalohead's Complaint attached a document labeled "Informal Resolution" that was dated July 23, 2022, *id.* at 8–9, there is no allegation or assertion in Buffalohead's Complaint or the *Martinez* Report that Buffalohead attached that document to the grievance he submitted to his unit team in November 2022.

Instead of refiling a properly supported grievance, Buffalohead appealed the unit team's decision directly to the Secretary of Corrections.

Doc. 1-1 at 6–7. The Secretary of Corrections responded by explaining that the prisoner grievance process under article 15 required Buffalohead to appeal to the facility's warden before seeking review by the Secretary. *Id.* at 16–17. The Secretary of Corrections forwarded Buffalohead's appeal to the warden, and Kincaid was again assigned as the investigating officer. *Id.*

Kincaid denied Buffalohead's grievance for three reasons, some of which Buffalohead had already been informed. Doc. 1-1 at 13–14. First, the grievance was untimely because Buffalohead filed it on November 28, 2022, but the incident happened in July 2022. *Id.* at 13. Second, Buffalohead did not attach documentation showing that he attempted informal resolution before submitting his initial grievance to his unit team. *Id.* Third, Buffalohead appealed directly to the Secretary of Corrections without seeking review by the warden of the facility first. *Id.* Buffalohead does not allege that he took any further administrative action after receiving Kincaid's decision.

**4.** One year later, Buffalohead filed this civil rights action against Cook and Kincaid. Doc. 1. Buffalohead alleges that both officers violated his right to be free from cruel and unusual punishment—Cook by unlocking his cell door, and Kincaid by attempting to cover up Cook's misconduct during the administrative process. *Id.* at 4–5. Buffalohead alleges that Cook and Kincaid's conduct has caused him ongoing psychological harm and seeks $250,000 in compensatory and punitive damages. *Id.* at 7.

Cook and Kincaid moved to dismiss. They argue that Buffalohead failed to exhaust his administrative remedies before filing this action. Doc. 23 at 3–11.

## II

Buffalohead failed to comply with the administrative procedures governing inmate grievances in Kansas prisons. That precludes a federal court from considering the merits of his claim. As a result, the defendants' motion to dismiss is granted.

### A

Invoking 42 U.S.C. § 1983, Buffalohead alleges that Cook and Kincaid failed to protect him from being attacked and stabbed by other

6

inmates in his cell.[1] Doc. 1 at 2. In the ordinary case, there is no exhaustion requirement for Section 1983 claims. *Porter v. Nussle*, 534 U.S. 516, 523–24 (2002) (citing *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982)). But that rule is different when a current or former prisoner brings a Section 1983 lawsuit alleging constitutional deprivations while he or she was incarcerated. *Id.* (citing *Wilwording v. Swenson*, 404 U.S. 249 (1971) (per curiam)).

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), a prisoner may not bring any claims stemming from prison conditions before exhausting all administrative remedies available to him or her in prison. Prison conditions include "general circumstances or particular episodes" of prison life, including a single encounter with a prison official. *Porter*, 534 U.S. at 532 (applying the exhaustion requirement to an inmate's Section 1983 excessive force claim against a corrections

---

[1] Buffalohead's Complaint did not clarify in what capacity he intended to sue Cook and Kincaid. When a complaint "does not clearly indicate that the defendants are being sued individually and/or in their official capacities, the determination must be made by reviewing 'the course of the proceedings.'" *Houston v. Reich*, 932 F.2d 883, 885 (10th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)); *Griffith v. El Paso Cnty., Colo.*, 129 F.4th 790, 821 n.24 (10th Cir. 2025) (examining the plaintiff's factual allegations to determine that her claim against a state actor should be construed as an official-capacity claim). Although Cook and Kincaid generously construe Buffalohead to assert both types of claims, his Complaint only appears to assert individual-capacity claims because there are no allegations that would suggest that Buffalohead considered any entity to be culpable for the deprivations that he alleges Cook and Kincaid caused, and he fails to allege any policy or custom that would support liability under *Monell*. *Crowson v. Wash. Cnty., Utah*, 983 F.3d 1166, 1173 n.1 (10th Cir. 2020) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (noting that an official-capacity suit "is, in all respects other than name, to be treated as a suit against the entity'"); *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1033 (10th Cir. 2020) (explaining that a *Monell* claim against a local governing body requires the plaintiff to allege an official policy or custom). And, in any event, the defendants' employer—the State of Kansas—or the entity responsible, if Buffalohead had alleged one, would be entitled to Eleventh Amendment immunity as an arm of the state. *See Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1211–12 (10th Cir. 2019) (finding the Eleventh Amendment precluded the plaintiffs' claims for damages against two officers in their official capacities on behalf of an arm of the state); *accord Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012) (noting that the Kansas Department of Corrections is an arm of the State of Kansas).

officer). And exhausting administrative remedies means pursuing "[a]ll 'available' remedies, ... [e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages." *Id.* at 524. Those complaints must be made "in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Proper exhaustion is required, meaning if administrative remedies are no longer available because the prisoner failed to timely file a grievance or otherwise fail to comply with procedural requirements, he or she has not met the requirements for exhaustion. *Id.* at 92–93.

State prisoners in Kansas are required to exhaust the four-step, sequential administrative remedy program codified in article 15 of chapter 44 of the Kansas Administrative Regulations before bringing Section 1983 claims in federal court. Kan. Admin. Regs. § 44-15-101a(d)(1). Article 15 applies to complaints about prison policies or conditions, actions by employees or inmates, and incidents that occurred inside the corrections facility. *Id.* at § 44-15-101a(d)(1)(A)–(B). It is designed to "incorporate several levels of problem solving to assure solution at the lowest administrative level possible." *Id.* at § 44-15-101(d). So, to fully exhaust an article 15 grievance, an inmate must first attempt informal resolution of the matter with the personnel "who work with the inmate on a direct or daily basis," then the inmate must file a formal grievance with his or her unit team before appealing to the warden, and then appealing to the Secretary of Corrections. *Id.* at § 44-15-101(b)–(d).

The personal injury claim process under article 16 is insufficient to fulfill the Prison Litigation Reform Act's exhaustion requirement for a Section 1983 claim. The substance of prison grievances and personal injury claims may overlap at times, *Sperry v. McKune*, 384 P.3d 1003, 1013 (Kan. 2016), but courts regularly hold that the two administrative processes are separate and distinct administrative remedies. *See, e.g.*, *Brown v. Schnurr*, No. 22-3183, 2023 WL 5163987, at *4 (10th Cir. Aug. 11, 2023) ("[T]he dual-track exhaustion processes of Articles 15 and 16 . . . clearly set out separate and distinct exhaustion paths."). Indeed, the text of both articles notes that the two administrative processes are independent from each other. *See, e.g.*, Kan. Admin Regs. § 44-15-101a(d)(2) (noting that article 15 "shall not be used in any way as a substitute for, or as part of, the . . . property loss or personal injury claims procedure [in article 16]"). So, regardless of whether a prisoner files a personal injury claim, the Prison Litigation Reform Act's exhaustion mandate requires that an inmate in Kansas exhaust any

8

Case 5:24-cv-03035-TC-TJJ   Document 33   Filed 12/31/25   Page 9 of 10

administrative remedies under article 15's prison grievance process before filing a Section 1983 lawsuit about alleged constitutional violations happening in the prison. *See Ross v. Blake*, 578 U.S. 632, 639–40 (2016) (noting that the textual mandates of administrative exhaustion processes must be strictly followed).

### B

Cook and Kincaid seek dismissal, arguing that Buffalohead failed to exhaust his administrative remedies before filing this action. For two independent reasons, these defendants' motion is granted.

*First*, Buffalohead's grievance was untimely. Article 15 requires a prisoner to file a grievance within fifteen days of discovering the event that gave rise to the complaint. Kan. Admin. Regs. § 44-15-101b. Buffalohead discovered Cook's alleged conduct no later than July 23, 2022, the first date that Buffalohead described his allegations against Cook in writing. *See* Doc. 1-1 at 8–9. That gave Buffalohead until August 12, 2022 to file a grievance. As Kincaid noted as one of the reasons for denying the grievance, *id.* at 13–14, Buffalohead did not do so until November 28, 2022—more than four months after the deadline. *Id.* at 1. The same is true of Buffalohead's claims against Kincaid. Buffalohead would have discovered Kincaid's alleged cover-up of Cook's misconduct on August 23, 2022, when Kincaid concluded that Buffalohead had fabricated his allegations against Cook. *See id.* at 23–24. Again, Buffalohead waited more than three months after that discovery to submit his article 15 grievance. This is insufficient. *Patel v. Fleming*, 415 F.3d 1005, 1109–10 (10th Cir. 2005) (finding that a plaintiff failed to exhaust his administrative remedies because he filed his grievance months after it was due); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032–33 (10th Cir. 2002) (affirming dismissal of a complaint where the prisoner failed to file a grievance within the fifteen-day time limit).

*Second*, Buffalohead failed to comply with each of the four steps required to exhaust his claim under article 15. Even assuming Buffalohead attempted informal resolution, he did not attach any proof of that attempt to his grievance. Doc. 1-1 at 13–14. That is why the unit team denied his initial grievance submission. *Id.* And when Buffalohead challenged the unit team's response, he sent his appeal directly to the Secretary of Corrections instead of appealing to the warden of his facility first. *Id.* at 6–7. Failing to comply with state-law exhaustion requirements precludes consideration of Buffalohead's claim. *See Thomas v. Parker*, 609 F.3d 1114, 1118–19 (10th Cir. 2010) (affirming the

9

district court's dismissal of a prisoner's Section 1983 claim because the prisoner did not properly complete the three requirements of the state-law grievance process); *Jernigan*, 304 F.3d at 1032 (finding that an inmate who started but did not complete the administrative process to exhaust his remedies for a Section 1983 claim).

## C

Buffalohead's response does not change this result. Styled as a "Motion to Stay," Buffalohead opposes Cook and Kincaid's motion to dismiss. Doc. 26. But Buffalohead focuses his arguments on the merits of his Eighth Amendment claims and does not confront the officers' arguments regarding administrative exhaustion under the Prison Litigation Reform Act. *See id.* Buffalohead did not properly exhaust his constitutional claims, so dismissal is mandatory. *Ross*, 578 U.S. at 640–41 (emphasizing the mandatory nature of the exhaustion requirement). To conclude otherwise would contradict Congress's decision in the Prison Litigation Reform Act "to eliminate unwarranted federal-court interference with the administration of prisons,' *Woodford*, 548 U.S. at 93, and 'to . . . afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Estrada v. Smart*, 107 F.4th 1254, 1267–68 (10th Cir. 2024) (quoting *Porter*, 534 U.S. at 525).

## III

For the foregoing reasons, Cook and Kincaid's Motion to Dismiss, Doc. 23, is GRANTED.

It is so ordered.

Date: December 31, 2025          s/ Toby Crouse
                                 Toby Crouse
                                 United States District Judge